**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Laura PAGAN, Defendant-Appellant.**

**No. 808, Docket 82–1333.**

United States Court of Appeals, Second Circuit.

Argued Jan. 25, 1983.

Decided Aug. 8, 1983.

Robert Koppelman, New York City, for defendant-appellant.

Carol B. Schachner, Asst. U.S. Atty., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y. and Jane Simkin Smith, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for plaintiff-appellee.

Before VAN GRAAFEILAND, PIERCE and WINTER, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Laura Pagan was convicted after a bench trial in the United States District Court for the Eastern District of New York (McLaughlin, J.) of knowingly importing or bringing merchandise into the United States contrary to law. 18 U.S.C. § 545 (1976). She appeals from her conviction on the ground that delay in bringing her case to trial resulted in a violation of the Speedy

Trial Act. 18 U.S.C. §§ 3161–3174 (1976 & Supp. V 1981). We affirm.

Appellant was arrested at Kennedy Airport in New York City on December 16, 1981, after a customs search revealed several secreted packets containing a white powdery substance which appellant had failed to declare. On December 17, 1981, appellant was arraigned on a complaint which charged her with importing and possessing cocaine hydrochloride with intent to distribute.

When the Government thereafter discovered that the substance was not cocaine, but lidocaine, a cocaine diluent, it dismissed the complaint without prejudice and without objection from appellant's attorney. Thereafter, by indictment filed on February 22, 1982, appellant was charged with attempted importation and possession of cocaine hydrochloride with intent to distribute.

On March 8, Judge McLaughlin set a trial date of April 13, and directed that motions be made by March 29 and responded to by April 2. On March 29, appellant moved to suppress the statement, "It's cocaine", made by appellant during the customs search.

On April 2, defense counsel requested an indefinite adjournment of the April 13 trial date because of his anticipated unavailability. At the same time, the Government informed the court that it had not decided whether to oppose or acquiesce in the motion to suppress, and whether it would proceed with the case in the event it acquiesced. A status conference was set for April 14, and an order was entered pursuant to stipulation, excluding the period of delay from March 29 to April 14.

The April 14 conference was not held, because, prior thereto, the Government informed the court that it had decided to dismiss the case. However, during the week following April 14, the Government notified the court that it had reconsidered and intended to proceed.

On May 14, 1982, the Grand Jury returned a superseding indictment against appellant charging her with the knowing importation into the United States of merchandise contrary to law, in violation of 18 U.S.C. § 545, and knowingly making false, fictitious and fraudulent statements in violation of 18 U.S.C. § 1001. On June 1, appellant moved to dismiss the case on Speedy Trial grounds. This appeal centers on the July 1 denial of that motion.

The Speedy Trial Act requires that the trial of an accused person commence within 70 days of the person's first appearance in court or the filing of an indictment, whichever is later. 18 U.S.C. § 3161(c)(1). However, two pertinent periods of time are excluded from the 70-day computation. Section 3161(h)(1)(F) excludes the delay resulting from the filing of a pretrial motion "through the conclusion of the hearing on, or other prompt disposition of, such motion." Section 3161(h)(1)(J) requires the court to exclude up to 30 days during which "any proceeding concerning the defendant is actually under advisement by the court." In deciding appellant's Speedy Trial motion, the district court had to determine whether it had taken appellant's motion to suppress under advisement, and, if so, whether this was done within a reasonable time after the motion to suppress was made. *United States v. Cobb,* 697 F.2d 38, 44 (2d Cir.1982). The court concluded that the motion should be considered as under advisement from April 14, the last day covered by the order of exclusion and thus the day on which the Government's response was due.

Our opinion in *United States v. Bufalino,* 683 F.2d 639 (1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 727, 74 L.Ed.2d 952 (1983), did not preclude the district court from so holding. We held in *Bufalino* that a defendant could not force a motion into the advisement stage by failing to respond to the Government's motion to sequester the jury. There, the trial court continued its attempts to ascertain the defendants' position concerning sequestration until the day the trial began. Here, the district court expected nothing from the Government after April 14. Although the district court was not compelled to hold that, as of that date, the matter was under advisement, the court did not err in holding that it was.

When the maximum 30-day "under advisement" exclusions for the motions to suppress and dismiss plus the 16-day period between March 29 and April 14 are subtracted from the 142-day period between the date of indictment and the date of trial, Speedy Trial requirements are satisfied.

Affirmed.

WINTER, Circuit Judge, dissenting:

Because the majority affirms an exercise of discretion which never happened, upon a rationale which is (i) conceded by the parties, including the government, to be erroneous, (ii) inconsistent with our decision in *United States v. Bufalino,* 683 F.2d 639 (2d Cir.1982), (iii) contrary to the Guidelines of the Committee on the Administration of Criminal Law of the Judicial Conference of the United States, ("Guidelines") and (iv) needlessly confusing in an area where bright lines are in the interest of all concerned, I dissent.

The key facts glossed over by the majority are that the government never responded in any way to the defendant's motion and Judge McLaughlin never ruled that he had the defendant's motion actually under advisement after April 14. Indeed, it is an undisputed fact that "the motion was never actually under advisement." Brief for Appellee at p. 13.

Recognizing that he did not as a fact ever have the motion under advisement, Judge McLaughlin held that the (J) period automatically began to run as a matter of law on the date on which the government's response to the motion should have been, but was not, filed. He evidently believed that to do otherwise would prejudice a defendant by unduly extending the allowable (F) period, thereby enabling the government to delay a trial simply by failing to respond to a motion. We now know that his apprehensions were groundless in light of our decision in *United States v. Cobb,* 697 F.2d 38 (2d Cir.1982), but he did not have the benefit of that teaching at the time of his ruling in the instant case.

The majority affirms on the grounds that "[a]lthough the district court was not com-

pelled to hold that, as of that date, the matter was under advisement, the court did not err in holding that it was." So far as one can determine, the majority holds that when the government fails to make a timely response to a motion, the district court has unfettered discretion after the fact to pick a date as to when the (J) period began to run, without regard to whether the motion was actually under advisement. In contrast, Judge McLaughlin was not exercising discretion but was following what he believed to be a legal command. Even if the majority's view of the law is correct, therefore, a remand would be in order. However, every available legal criteria suggest the law is otherwise.

In *Bufalino,* we specifically held that a district court "could not have taken [a] motion under advisement in any meaningful way until the defendants made their positions known." *Id.* at 645. If there is a reason why district courts are able to take motions under advisement in a meaningful way when the government rather than a defendant does not make its position known, that reason is not evident in the majority opinion. It is also not evident to the government, which expressly conceded that *Bufalino* is exactly on point as to this issue. Brief for Appellee at p. 12. That position is hardly surprising since, if *Bufalino* held anything, it was that the (J) period begins only after the non-moving party has responded and the matter is submitted to the court for decision. Neither event occurred in this case.

*Bufalino* also stated that we should look to the Guidelines for guidance in interpreting the Speedy Trial Act. The Guidelines state that the (J) period starts on "the day following the date on which the court has received everything it expects from the parties." In the present case, the government never informed Judge McLaughlin whether it intended to oppose the motion and proceed with the indictment, concede the motion and proceed, or seek a superseding indictment. Since the government had carefully preserved each of these options, some response was obviously to be "expect-

ed," before the court could or would consider the motion on its merits. In rejecting the Guidelines' sensible bright line for a "do your own thing" rule, the majority has introduced needless confusion which may well have unforeseen consequences.

The government concedes that (J) is inapplicable in the instant case but argues that the (F) period continued to run for a time to allow it to decide whether to oppose the motion or seek a superseding indictment. In view of the majority's disposition of the appeal, that issue is moot. However, by relying on grounds which permit a district court *ex post* to cut off the (F) period simply by declaring well after the fact that the (J) period had begun to run, the majority may well be creating opportunities for skilled defense counsel in future cases to deprive the government of the time accorded it under (F).

I therefore dissent.