**UNITED STATES of America,
Appellant,**

v.

**Martin ROMAN, Defendant-Appellee.**

**No. 948, Docket 86–1521.**

United States Court of Appeals,
Second Circuit.

Argued March 31, 1987.

Decided June 22, 1987.

Bruce A. Baird, New York City, Asst. U.S. Atty., S.D.N.Y. (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Aaron R. Marcu, Asst. U.S. Atty., of counsel), for appellant.

Joel A. Brenner, New York City (Kenneth Joelson, Bobick, Joelson & Rochkind, New York City, of counsel), for defendant-appellee.

Before FEINBERG, Chief Judge, PRATT and ALTIMARI, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

The United States of America appeals, pursuant to 18 U.S.C. § 3731, from an order of the United States District Court for the Southern District of New York, Leisure, J., 646 F.Supp. 1568 (1986), dismissing with prejudice, on speedy trial grounds, one count of a superseding indictment charging appellee Martin Roman with managing a continuing criminal enterprise ("CCE") to distribute heroin in violation of 21 U.S.C. § 848. Roman moved to dismiss the CCE charge, which was first asserted as part of the superseding indictment, on the ground that his right to be tried within 70 days following arraignment on the original indictment had been violated, even though, due to certain exclusions, the speedy trial clock had not yet run out on the original indictment.

The district court concluded that the CCE charge was "required to be joined with" the conspiracy charge of the original indictment, and that the 70–day speedy trial clock therefore commenced to run on the CCE charge with the date of arraignment on the original indictment, but that the exclusions of time under 18 U.S.C. § 3161(h), which had been applied to the original indictment, should not be applied to the additional CCE charge in the superseding indictment. Accordingly, the district court dismissed the CCE count with prejudice. For the reasons set forth below, we reverse and remand.

## BACKGROUND

On May 6, 1986, the grand jury returned against Martin Roman an eight count indictment charging him with conspiring to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 846, and with distributing and possessing with intent to distribute heroin in violation of 21 U.S.C. § 841(b)(1)(B). Roman was arraigned on May 15, 1986.

While the original indictment was pending, various periods of time were excluded from the 70–day period within which the Speedy Trial Act, 18 U.S.C. § 3161(c)(1), requires trial to commence. The exclusions were granted because some of Roman's co-defendants were unavailable and because defendants made several pretrial motions.

On September 5, 1986, when 48 days still remained on the speedy trial clock, the grand jury returned a superseding indictment that essentially restated the original charges against Roman and added, in count two, a charge of managing a continuing criminal enterprise engaged in the distribution of heroin, in violation of 21 U.S.C. § 848. The conspiracy and distribution charges remained as independent counts and were also incorporated in the new CCE charge as predicate acts.

On October 1, 1986, Roman moved to dismiss the new count two on the ground that 70 speedy trial days had passed without the commencement of trial. 18 U.S.C. § 3161(c)(1). He argued that the CCE count was an offense required to be joined with the charges in the original indictment and that he was, therefore, entitled to be tried on that count within 70 days of his arraignment on the original charges.

In opposition the government argued first that the speedy trial clock did not begin to run with respect to the CCE count until the superseding indictment was filed. Alternatively, the government argued that even if the 70–day period for the CCE charge began to run when Roman was arraigned on the original charge, the time exclusions that had been applied to the charges in the original indictment should apply as well to the superseding indictment.

Roman conceded that the 70–day period had not expired with respect to the charges that appeared in the original indictment but argued, regarding the CCE charge, that "it makes little sense to suggest that speedy trial would be stayed as to charges which did not even exist during this period."

The district court agreed, holding that, under applicable double jeopardy principles, the CCE charge in the superseding indictment must be considered the same as, or required to be joined with, the conspiracy charge in the original indictment, so that the speedy trial clock began ticking for both at the same time: when Roman was arraigned on the original indictment. The district court also rejected the government's argument that the exclusions granted under the original indictment should apply to the 70–day period for the CCE charge. The court therefore dismissed count two of the superseding indictment with prejudice on November 13, 1986, and, on December 22, 1986, denied the government's motion for reargument and reconsideration.

On this interlocutory appeal the issue is whether the speedy trial exclusions applied to the original indictment should apply as well to a superseding indictment that contains charges which, under double jeopardy principles, are required to be joined with the original charges. Because we conclude that 18 U.S.C. § 3161 should be interpreted to apply the original 70–day clock to the superseding indictment, complete with exclusions, we reverse and remand for further proceedings. We reach our decision based on the language of the statute, the Second Circuit Guidelines Under the Speedy Trial Act, relevant case law, the speedy trial plans of every district court in this circuit, common sense, and sound policy considerations.

## DISCUSSION

The Speedy Trial Act requires a criminal trial to begin within 70 days of the later of indictment or arraignment. 18 U.S.C. § 3161(c)(1). *See United States v. Piteo*, 726 F.2d 50, 50 (2d Cir.1983), *cert. denied*, 466 U.S. 905, 104 S.Ct. 1682, 80 L.Ed.2d 156 (1984).

■ Certain periods of delay are excluded in computing the 70–day period. 18 U.S.C. § 3161(h). Exclusions are commonly granted, for example, for the litigation and disposition of pretrial motions, § 3161(h)(1)(F), or due to the unavailability of a defendant or essential witness, § 3161(h)(3)(A). In addition, the court, on its own motion or at either party's request, may grant a continuance based on its finding that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). Thus, the act requires that the trial of an indicted defendant occur within 70 nonexcluded days from the date on which an indictment is filed, or from the date of the defendant's first appearance before a judicial officer, whichever is later.

■ Although the Speedy Trial Act contains no reference to a "superseding indictment", which is a second indictment filed before dismissal of the original, or underlying, indictment, there is an instructive provision in the act that covers an analogous situation. Section 3161(h)(6) applies when an indictment is dismissed on the govern-

ment's motion and another charge "for the same offense, or any offense required to be joined with that offense" is filed. In that situation the act provides that the speedy trial clock is tolled during the period of time after dismissal, when no charges are pending, and on the new indictment the clock resumes from the point at which it stopped when the original indictment was dismissed. 18 U.S.C. § 3161(h)(6). *See United States v. McCown,* 711 F.2d 1441, 1446 (9th Cir.1983) (under § 3161(h)(6), "the time period is merely tolled during the period when no indictment is outstanding"). Thus, the statute provides that when reindictment follows dismissal the exclusions of time allowed under the first indictment continue to apply. We can discern no logical reason to apply a different rule to a superseding indictment simply because it is filed sooner, while the first indictment is still pending.

In addition to the statutory language, the Second Circuit Guidelines Under the Speedy Trial Act are instructive because they focus specifically on superseding indictments. *See United States v. Rojas-Contreras,* 474 U.S. 231, 106 S.Ct. 555, 558, 88 L.Ed.2d 537 (1985) (using the guidelines to resolve the issue of whether the act prohibits commencement of a trial less than 30 days after arraignment on a superseding indictment).

These guidelines indicate that where the original indictment is pending when the subsequent charge is filed and the superseding indictment contains an "offense required to be joined with an originally charged offense", the offenses contained in the superseding indictment shall inherit both the 70–day time clock of the original indictment and the exclusions granted thereunder. The guidelines provide:

1. If, after an indictment * * * has been filed, [an] * * * indictment * * * ("subsequent charge") is filed which includes the same offense or any offense required to be joined with that offense ("originally charged offenses"), the time limits * * * applicable to the originally charged offenses will be determined as follows:

\* \* \* \* \* \*

(c) If the original indictment * * * is pending at the time the subsequent charge is filed, * * * [t]he trial of the originally charged offenses included in the subsequent charge shall commence within the time limit for commencement of trial on the original indictment * * *.

Judicial Council of the Second Circuit, Guidelines Under the Speedy Trial Act II(L)(1)(c) (approved Jan. 19, 1979) [hereinafter Second Circuit Guidelines]. The comment to guideline II(L) further clarifies the treatment of "originally charged offenses" in a superseding indictment:

[A]ssume that after [65] days of non-excluded time has run in the arraignment-trial interval and while the first indictment is still pending, a superseding indictment is handed up containing the same charges as well as new ones. Under guideline 1(c) above, the clock stops running until the arraignment on the new indictment has taken place. * * * [F]ollowing the arraignment on the superseding indictment, there are only five (5) days of non-excluded "arraignment-trial" interval time left for trial of those offenses in the superseding indictment that are contained in the original indictment.

Comment, Second Circuit Guidelines, Section II(L). Since the term "nonexcluded time" is used here to describe the original speedy trial days that are carried over to a superseding indictment, the exclusions granted under the original indictment are necessarily assumed to apply to the superseding indictment.

Defendant does not disagree with this analysis but, instead, would simply have this court disregard the Second Circuit Guidelines and in effect invalidate the speedy trial plans of all districts in this circuit. This we decline to do.

Four years after the passage of the original Speedy Trial Act, Pub.L. No. 93–619, 88 Stat. 2076 (1975), *amended by* Pub.L. No. 96–43, 93 Stat. 327, 328 (1979) *and* Pub.L. No. 98–473, 98 Stat. 2167 (1984), the Judi-

cial Council of the Second Circuit approved the Guidelines Under the Speedy Trial Act "for the guidance of the bench and bar and for the eventual inclusion in the Speedy Trial Act plan of each district court." Foreword, Second Circuit Guidelines. When the guidelines were adopted, the Judicial Council Speedy Trial Act Committee (Mansfield, *J.*, Oakes, *J.*, Gurfein, *J.*) emphasized that, although the guidelines "do not have the force of law * * * they have been drafted by * * * experienced judges, prosecutors, defense counsel, court officials, Speedy Trial Act reporters and academicians and represent their best judgment as to how various provisions of the Speedy Trial Act should be interpreted to achieve its purpose." *Id.* We have since recognized that the guidelines "are entitled to appropriate respect." *United States v. Todisco,* 667 F.2d 255, 260 (2d Cir.1981), *cert. denied,* 455 U.S. 906, 102 S.Ct. 1250, 71 L.Ed.2d 444 (1982). *Cf. United States v. Sebastian,* 428 F.Supp. 967 (W.D.N.Y. 1977), *aff'd without opinion,* 578 F.2d 1372 (2d Cir.1978).

Shortly after the guidelines were approved, the judges of each district in the second circuit adopted speedy trial plans pursuant to congressional directive in the act itself, 18 U.S.C. §§ 3165–68. *See, e.g.,* United States District Court for the Eastern District of New York, *Plan for Prompt Disposition of Criminal Cases,* in Federal Bar Council, *Second Circuit Redbook* 343 (1984). Except for slight variations in language in the plan for the District of Connecticut, every district court in this circuit adopted the language of Second Circuit Guidelines II(L)(1)(c). *See, e.g., id.* Furthermore, these rules, unlike the guidelines themselves, have the effect of law. Given this background, when the guidelines and the statutory language point in the same direction, as they do here, we are not inclined to strain to arrive at a contrary result.

This circuit's actual treatment of superseding indictments supports our conclusion. Although the issue before this court has not been discussed previously in this circuit, our courts have routinely applied exclusions granted under original indict-

ments to superseding indictments. *See, e.g., United States v. Pagan,* 714 F.2d 225, 226–27 (2d Cir.1983) (exclusions for pretrial motions under original indictment carried over to superseding indictment); *United States v. Piteo,* 726 F.2d 50, 52–53 (2d Cir.1983) (court looked to original time clock, with exclusions, to determine if delay of defendant's trial due to joinder of co-defendant in superseding indictment was "reasonable" under § 3161(h)(7)), *cert. denied,* 466 U.S. 905, 104 S.Ct. 1682, 80 L.Ed.2d 156 (1984); *United States v. Bufalino,* 683 F.2d 639, 646 & n. 9 (2d Cir. 1982) (exclusions for motions under original indictment carried over to superseding indictment), *cert. denied,* 459 U.S. 1104, 103 S.Ct. 727, 74 L.Ed.2d 952 (1983). In some cases where no violation was found, the results might have been different if the exclusions had not applied. *See, e.g., Pagan,* 714 F.2d 225; *Bufalino,* 683 F.2d 639.

The third circuit apparently shares our view on this issue. Where a defendant argued that the 70–day period applicable to the superseding indictment should be calculated from the filing of the original indictment, but that exclusions granted for motions pertaining to the original indictment should not be applied to the superseding indictment, the third circuit rejected the defendant's argument and stated, "[t]he appellant cannot have it both ways: if the Speedy Trial clock starts to run with the filing of the original indictment, it must stop for excludable delays pertaining to that indictment." *United States v. Novak,* 715 F.2d 810, 813 (3d Cir.1983), *cert. denied,* 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984).

Roman's argument that this case presents a "hybrid situation" is unconvincing. While conceding that the original 70–day trial clock, with exclusions, attaches when the superseding indictment contains the same charges as the original indictment, and that a new 70–day clock begins to run when the superseding indictment contains a completely new charge, Roman asserts that where the offense charged in the superseding indictment is one required to be joined with the charges in the first

indictment, the original 70–day clock should attach *without* exclusions. The rationale offered for this "hybrid" solution is that the offense required to be joined under double jeopardy principles "should have been brought" when the first indictment was filed; therefore, the original 70–day clock applies. The exclusions should not apply, Roman argues, because where the superseding indictment charges a different offense than the original, "there is no basis for presuming that what gave rise to the exclusions under the other charges would have given rise to those exclusions under the new offense".

This attempt by Roman to create a unique slot for his case cannot, however, be harmonized with the result required by the statute when there is reindictment following dismissal. Congress could have distinguished, in 18 U.S.C. § 3161(h)(6), between an indictment containing the same offense as the original and one containing an offense required to be joined with the originally charged offense, but it did not do so. Roman fails to raise any cogent argument why the statutory treatment should differ merely because the new indictment is filed during the pendency of the original, instead of after its dismissal.

▌ Fairness to a defendant does not require that he be informed, at the time he takes positions regarding exclusions under the original indictment, of all charges that may ultimately be brought against him. On the contrary, Roman's interpretation of the act would, in effect, put pressure on the government to "bring in the original indictment all offenses required to be joined therewith", a result that would misconstrue the purpose and the language of the Speedy Trial Act. As we stated in *United States v. Hillegas*, 578 F.2d 453, 456 (2d Cir.1978), "[t]he policy and purpose of the Act * * * [is] to expedite the processing of *pending* criminal proceedings, not to supervise the exercise by a prosecutor of his investigative or prosecutorial discretion" (emphasis in original).

The legislative history of the Speedy Trial Act indicates that Congress was concerned with both the rights of criminal defendants and the interests of society in general. The bill's purpose was "to give effect to the sixth amendment right to a speedy trial for persons charged with criminal offenses," S.Rep. No. 93–1021, 93d Cong., 2d Sess. 1 (1974), and "to assist in reducing crime and the danger of recidivism by requiring speedy trials." H.Rep. No. 93–1508, 93d Cong., 2d Sess. 8, *reprinted in* 1974 U.S.Code Cong. & Admin.News 7401. *Accord United States v. Stayton*, 791 F.2d 17, 19–20 (2d Cir.1986) ("The Speedy Trial Act was designed to effectuate the interests of society in general and of the defendant in particular by ensuring that our courts mete out speedy justice." (citation omitted)); *United States v. Hillegas*, 578 F.2d at 456 n. 3 ("'A defendant who is charged with a violation of the law becomes a burden to society in the sense that his status consumes the time and energy of all components of the criminal justice system with which he comes in contact: the police, magistrate, clerks of court, probation officers, judges and others.'" (citation omitted)).

As the legislative history and this circuit's interpretation of the purposes of the Speedy Trial Act confirm, Congress was concerned generally with the efficient administration of justice, and with that goal in mind, decided that the government's prosecutorial flexibility should remain unfettered in this context. Forcing the government to bring charges prematurely would burden courts with weak cases and with applications for continuances, and thus tend to defeat the public interest and the central purpose of the act. *See Hillegas*, 578 F.2d at 460.

Reversed and remanded.